**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
FINANCIAL FEDERAL CREDIT INC.,

                            Plaintiff,                        **REPORT AND**
                                                                        **RECOMMENDATION**

                        - against -                         CV 09-2904 (ADS) (AKT)

EAST-WEST AGGREGATE INC. and
LIBERATORE IABONI,

                            Defendants.
----------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

Following the notation of default and entry of a default judgment against the Defendants East-West Aggregate Inc. ("East-West") and Liberatore Iaboni ("Iaboni"), District Judge Spatt referred this matter to me for an inquest as to damages and costs, if appropriate. *See* DE 27.

Financial Federal Credit Inc. ("FFCI" or "Plaintiff") commenced this action in light of Defendants' breach of a certain promissory note, security agreements and a related guaranty. The Plaintiff requests that judgment be entered against Defendants, jointly and severally, in the amount of $127,041.98, which consists of: (1) $103,282.94 in unpaid principal; (2) $15,614.64 in unpaid interest up through June 22, 2009; (3) $2,670.40 in late charges; and (4) $5,474.00 in prepayment premium. In addition, the Plaintiff seeks pre-judgment and post-judgment interest.[1]

---

[1] The Plaintiff initially sought pre-judgment interest "at the contractual default rate of 24% per annum ($83.53 per day) from and after June 22, 2009 through entry of judgment." However, a subsequent affidavit submitted by the Plaintiff indicates that interest should be calculated at the contractual rate of 11.5%. *See* Andrew G. Remias Aff. of Damages ¶ 17. In addition, the Plaintiff initially sought a damages award that included all incurred costs as well. However, the Plaintiff has withdrawn this component of damages and confirms that it is not seeking to include attorneys' fees, costs and expenses. *Id.* ¶ 18.

Based upon the information submitted by the Plaintiff and the applicable law regarding damages in the context of a default, as well as for the reasons stated below, I respectfully recommend to Judge Spatt that damages be awarded to the Plaintiff in the sum of $148,419.50, consisting of: (1) $103,282.94 in unpaid principal; (2) $36,992.16 in unpaid interest as of April 1, 2011; (3) $2,670.40 in late charges; and (4) $5,474.00 in prepayment premium. In addition, I further recommend that interest continue to accrue at a daily rate of $32.99 for every day after April 1, 2011 until judgment is entered.

## II. BACKGROUND

Throughout 2005 and 2006, the Plaintiff provided financing to East-West for the acquisition and purchase of equipment as well as for working capital. *See* Compl. ¶ 5. On March 22, 2006, East-West executed and delivered to FFCI a Promissory Note in the amount of $45,396 ("Note 1"), which was to be paid in 36 installments commencing on March 1, 2006 and continuing on the same day each month until paid in full. *Id.* ¶ 6. Note 1 was secured by a Security Agreement ("Security Agreement 1"), which was perfected by the Plaintiff, granting FFCI a security interest in a 2003 Benson Dump Trailer and a blanket security interest in all goods, inventory, equipment, accounts and other property of East-West. *Id.* ¶¶ 7-8.

On April 6, 2006, East-West executed and delivered to FFCI a second Promissory Note in the amount of $200,280 ("Note 2"), which was to be paid in 60 monthly installments commencing on May 6, 2006, and continuing on the same day of each month thereafter until paid in full. *Id.* ¶ 9. Note 2 was secured by a Security Agreement ("Security Agreement 2"), which was perfected by the Plaintiff, granting FFCI a security interest in a 2006 Kenworth Tractor as well as a blanket security interest in all of East-West's property. *Id.* ¶¶ 10-11.

Although the indebtedness owed under Note 1 was satisfied, East-West failed to make payments as promised under the terms of Note 2 and defaulted in payment of the monthly installments which fell due on April 6, 2008 and each successive month thereafter.[2] *Id.* ¶¶ 15, 21. In the event of a default, pursuant to the terms set forth in Note 2 and the Security Agreement 2 (collectively "Loan Documents"), FFCI could accelerate the maturity of the indebtedness and obligations owed by East-West. *Id.* ¶ 16.

In addition, on March 25, 2005, prior to the above loans being executed, Defendant Iaboni executed and delivered to FFCI a continuing guaranty ("Guaranty") which provided that Iaboni would be directly and unconditionally liable to the Plaintiff for the due payment and performance of all indebtedness and obligations owed by East-West to FFCI. *Id.* ¶¶ 17-18; *see also* Remias Supp. Aff. of Damages ("Remias Supp. Aff.") Ex. G.

Based on the above occurrences, the Plaintiff filed this action on July 8, 2009.[3] *See* DE 1. The Summons and Complaint were served on the Defendants on July 10, 2009 *See* DE 6-7. After Defendant failed to answer the Complaint, Plaintiffs moved for entry of default judgment on October 26, 2009 *See* DE 25. A Notation of Default was entered by the Clerk of the Court on October 27, 2009 and District Judge Spatt entered a default judgment against the Defendants on February 18, 2010. *See* DE 26-27.

---

[2] The Court notes that the obligations, indebtedness and collateral pledged by East-West under the Notes and Security Agreements are cross-collateralized, cross-defaulted and cross-secured. Compl. ¶ 14.

[3] In addition, the Plaintiff filed a proposed Order to Show Cause why an Order should not be entered directing the U.S. Marshal to seize any and all collateral which fell under the Security Agreements. *See* DE 3. After certain modifications, an Order to Show Cause was entered on July 8, 2009. *See* DE 5. This eventually led to the relief requested in the Order to Show Cause being granted and an Amended Order for Repossession and Judgment being entered. *See* DE 21.

**III. DISCUSSION**

A default constitutes an admission of all well-pleaded factual allegations in the Complaint and the allegations as they pertain to liability are deemed true. See *Joe Hand Promotions, Inc. v. El Norteno Restaurant Corp.*, No. 06 Civ. 1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Greyhound Exhibitgroup, Inc. v. E.I.U.I. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080 (1993)). A default judgment entered on the well-pleaded allegations in the Complaint establishes a defendant's liability. *See Garden City Boxing Club, Inc. v. Morales*, No. 05 Civ. 0064, 2005 WL 2476264, at *3 (E.D.N.Y. Oct. 7, 2005) (citing *Bambu Sales, Inc. v. Ozak Trading, Inc*., 58 F.3d 849, 854 (2d Cir. 1995)).

For purposes of an inquest, the Court generally accepts as true all of the well-pleaded factual allegations set forth in the Complaint, except those related to damages. *See Trustees of the Plumbers Local Union No. 1 Welfare Fund v. Philip Gen. Constr.*, No. 05-CV-1665, 2007 WL 3124612, at *3 (E.D.N.Y. Oct. 23, 2007) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir.1981)). The only question remaining, then, is whether the Plaintiff has provided adequate support for the relief they seek. *See Greyhound Exhibitgroup, Inc*., 973 F.2d at 158; *see also Finkel v. Omega Commc'n Servs., Inc.*, 543 F. Supp. 2d 156, 160 (E.D.N.Y. 2008) (determining that a Court must still "conduct an inquiry to ascertain the amount of damages with reasonable certainty" after an entry of default).

The Second Circuit has approved the holding of an inquest by affidavit, without an in-person court hearing, "as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment." *LaBarbera v. Les Sub-Surface Plumbing, Inc.*, No. 06-CV-3343, 2008 WL 906695, at *3 (E.D.N.Y. Apr. 3, 2008) (quoting *Transatlantic Marine Claims*

*Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir.1997)). The Plaintiff submitted the following documents in support of its request for an award of damages: (1) Andrew G. Remias Aff. in Support of Default Judgment ("Remias Default Aff."); Andrew G. Remias Aff. of Damages ("Remias Aff."), with annexed exhibits including the Notes, Security Agreements, Guaranty, and proof of perfection of security interests; and (3) Andrew G. Remias Supp. Aff. of Damages ("Remias Supp. Aff.") with annexed exhibits, including previously provided exhibits (with additional supporting documentation) as well as a copy of the pay history and accelerated close out relative to Note 2.

The Court finds that Plaintiff's submissions provide sufficient evidence to form the basis for an award of damages. The following discussion assesses the amount of damages to which the Plaintiff is entitled based upon the information set forth in Plaintiff's supporting documentation and as evaluated by the Court.

### A. Unpaid Principal

According to the Plaintiff, the outstanding principal totals $103,282.94. *See* Remias Aff. ¶ 15. The original amount of Note 2 was $200,280, which was comprised of $151,155 in principal plus $49,125 in pre-computed interest. Remains Supp. Aff. ¶ 8 and Ex. D. Note 2 required payments in 60 monthly installments, each in the amount of $3,338, commencing on May 6, 2006 and continuing on the same day of each month thereafter. *Id.* ¶ 8 and Ex. D. Additionally, should there be a default, the Loan Documents allow for the Plaintiff to accelerate the maturity of the obligations. *Id.* ¶ 14. For instance, Note 2 states:

> Upon nonpayment when due of any amount owing hereunder, or if default occurs under any other obligation of Maker to Holder or under any security agreement . . . Holder may, at its option, without notice

> or demand, accelerate the maturity of the accrued and unpaid indebtedness then outstanding under this Note and declare same to be at once due and payable whereupon it shall be and become immediately due and payable.

*Id.* Ex. D. Similarly, the Security Agreement allows for the Plaintiff to accelerate the maturity of the obligations in the event of a default. *Id.* Ex. E. ¶ 8.

According to the documents provided to the Court, the last payment Plaintiff received from East-West occurred on February 28, 2008. *Id.* Ex. H. At that point, East-West only paid 23 of the 60 installments due to the Plaintiff. Therefore, 37 installments of $3,338 totaling $123,506 were, and still are, owed to the Plaintiff. However, this outstanding balance of $123,506 consisted of $103,282.94 in principal with the remaining amount consisting of the pre-computed interest. *Id.* As such, I respectfully recommend to Judge Spatt that damages be awarded in favor of the Plaintiff in the amount of $103,282.94 for unpaid principal.

### B. Interest

As an initial matter, as of June 22, 2009, the date Plaintiff accelerated the loan, $15,614.64 in unpaid interest had accrued and remains outstanding. However, the Plaintiff also asserts that under the contractual terms of the Loan Documents, Plaintiff is also entitled to receive pre-judgment interest that has accrued and continues to accrue on the outstanding principal of the loan from June 22, 2009 until judgment is entered. *See* Remias Supp. Aff. ¶ 21. Note 2 states that "Maker shall pay, on demand, interest on the unpaid indebtedness (excluding unpaid late charges) at the maximum lawful daily rate, but not to exceed .0666% per day, until paid in full." *Id.* Ex. D. Additionally, the Security Agreement states that a "Secured Party may require Debtor to pay all accrued interest . . . ." *Id.* Ex. E ¶ 8.

As such, Plaintiff is entitled to interest that continues to accrue on the outstanding principal of $103,282.94 at the contractual interest rate of 11.5%, which results in additional yearly interest of $11,877.54 or *per diem* interest of $32.99 (*e.g.,* $103,282.94 x 11.5% / 360 days in contractual calendar year). As of April 1, 2011, the interest that has accrued on the principal since June 22, 2009 totals $21,377.52 (648 days x $32.99). Adding the $15,614.64 in interest that accrued prior to June 22, 2009 to the $21,377.52 post-June 22, 2009 interest results in a total interest figure of $36,992.16. Therefore, I respectfully recommend that damages of $36,992.16 be awarded to the Plaintiff for accrued interest through April 1, 2011, with additional daily interest of $32.99 until judgement is entered.

With regard to Plaintiff's request for post-judgment interest, the Court notes that 28 U.S.C. § 1961 provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). "This provision has been interpreted as mandatory and not within the court's discretion." *Sea-Land Corp. v. Global Furniture Indus., Inc.*, 130 F.R.D. 279, 281 (E.D.N.Y. 1990). Post-judgment interest accrues from the date of judgment until the date of payment of the principal amount. Therefore, post-judgment interest cannot be awarded to a party "until such time as a final money judgment is reflected in the records of the clerk's office." *Id.* Once judgment is entered by the Clerk of the Court, post-judgment interest on the final money judgment will start to accrue.

    **C.**    **Late Charges**

Pursuant to the agreed upon terms of Note 2, a late charge of 5% would be applied to every regularly scheduled monthly installment payment which was not received within 5 days of its monthly due date. *See* Remias Supp. Aff. ¶ 16 and Ex. D. Specifically, Note 2 states:

> Maker shall also pay to Holder on demand, on each installment (of principal and/or interest) not fully paid prior to the fifth day (or such longer period as required by law) after its due date, a late charge equal to the maximum percentage of such overdue installment legally permitted as a late charge, not to exceed five percent (5%) . . .

*Id.* Ex. D. Similar language also appears in Security Agreement 2. *Id.* Ex. E, ¶ 3. Although East-West failed to pay any monthly installment by the required sixth day of every month, payments were sent to the Plaintiff in bunches. At the time the obligations owed under Note 2 were accelerated by the Plaintiff, which appears to have occurred on June 22, 2009, East-West failed to make 36 regularly scheduled monthly payments within the grace period provided.[4] *Id.* Ex. H. However, East-West did provide the Plaintiff with an additional $3,338 on February 28, 2008 which the Plaintiff credited toward 20 late charges that had accumulated. *Id.* ¶ 20 n.2 and Ex. H. With this credit, the Plaintiff is still owed late charges on 16 monthly payments at $166.90 (5% of the monthly payment of $3,338) for a total of $2,670.40. Accordingly, I respectfully recommend to Judge Spatt that damages be awarded in favor of the Plaintiff in the amount of $2,670.40 for unpaid late charges.

### D    Prepayment Premium

Lastly, according to the terms of Note 2, the Plaintiff is allowed to collect a contractual prepayment premium in the event there was any prepayment of the indebtedness, irrespective of whether the prepayment was voluntary or involuntary. Remias Supp. Aff. ¶ 18. Specifically, Note 2 provides that:

> As a material inducement of Holder to advance funds or otherwise provide financial accommodations to or for the benefit of Maker

---

[4]    Only the monthly payments of May 6, 2007 and March 6, 2008 were paid in a timely fashion. Remias Supp. Aff. Ex. H.

> and/or in consideration of Holder having previously done so, Maker agrees that in the event that any prepayment of any of Maker's indebtedness for borrowed money now or hereafter owing to Holder (whether evidenced hereby or otherwise), whether voluntary or involuntary; Maker shall simultaneously pay a prepayment premium equal to the sum of (a) fifteen hundredths percent (0.15%) of the principal amount then being prepaid multiplied by the number of calendar months between the date of such prepayment and the scheduled final maturity date of the indebtedness being prepaid, plus (b) two percent (2%) of the principal amount of the indebtedness then being prepaid, but no more than the maximum amount permitted by law.

*Id.* At the time Plaintiff accelerated East-West's obligations under Note 2, East-West had 22 monthly payments remaining (*i.e.* July 6, 2009 through April 6, 2011). Because the principal amount being prepaid as a result of the default and subsequent acceleration is $103,282.94, taking 0.15% of the principal (yielding $154.92441) and multiplying by the 22 scheduled monthly payments remaining between acceleration and maturity results in a sum of $3,408.34. In addition, 2% of the principal amount then being prepaid yields $2,065.66. Added to the $3,408.34 sum, the prepayment premium owed to the Plaintiff totals $5,474.00. As such, it is my recommendation to Judge Spatt that damages be awarded to Plaintiff in the amount of $5,474.00 for the contractual prepayment premium.

### IV.     CONCLUSION

Based upon the foregoing information, I respectfully recommend to Judge Spatt that Plaintiff be awarded $148,419.50 in damages plus $32.99 for each day after April 1, 2011 until judgment is entered, pursuant to the following amounts:

- $103,282.94 in unpaid principal;

- $36,992.16 in unpaid interest through April 1, 2011, with additional interest accruing at a daily rate of $32.99 until judgment is entered;

- $2,670.40 in late charges; and

- $5,474.00 in prepayment premium.


Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, any objections to this Report and Recommendation must be filed within fourteen (14) days of service. Each party has the right to respond to the other's objections within fourteen (14) days after being served with a copy. *See* Fed. R. Civ. P. 6(a),(e), 72. All objections shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Arthur D. Spatt. Any request for an extension of time for filing objections must be directed to Judge Spatt prior to the expiration of the period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Plaintiff's counsel is directed to serve a copy of this Report and Recommendation forthwith upon Defendants by overnight mail and first class mail and to file proof of service on ECF.

**SO ORDERED.**

Dated: Central Islip, New York
      April 15, 2011

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge